IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WESLEY THOMPSON, <br><br> Plaintiff, <br><br> v. <br><br> MEL COULTER, et al., <br><br> Defendants. | MEMORANDUM DECISION & ORDER <br><br><br> Case No. 2:12-CV-00680-CW <br><br> Judge Clark Waddoups |

Plaintiff, Wesley Thompson, an inmate at Utah State Prison (USP), filed this *pro se* civil rights suit.  *See* 42 U.S.C.S. § 1983 (2016).  Before the court now is Defendant's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies.

## ANALYSIS

### I. Material Facts[1]

1.      Plaintiff is an inmate at USP. (Compl. ¶ 1.) However, the events concerning his Complaint happened when Plaintiff was an inmate in Central Utah Correctional Facility (CUCF).

2.      Between 2009 and 2011, Plaintiff was classified as a "C2K" inmate, requiring he be housed in a maximum-security housing unit with limited privileges. (*See* Initial Assessment (filed under seal) and attached as Ex. 5 to the *Martinez* Rep. and June 21, 2011 Re-Assessment (filed under seal) attached as Ex. 6 to the *Martinez* Rep.)

---

[1] The facts presented here are drawn directly from Plaintiff's Complaint (Doc. 6), Defendants' Memorandum in Support of Motion for Summary Judgment (Doc. 36), the *Martinez* Report and supporting materials (Doc. 32).

3. In June 2011, Plaintiff had his annual classification reassessment. Though Plaintiff's security score "C" and behavior classification "Kappa" remained, his security classification changed to level 3, making him a "C3K." (*Martinez* Rep. Ex. 6 (filed under seal).)

4. As a level-3 inmate, Plaintiff could be moved to less-restrictive transition housing within CUCF and was eligible for more privileges and programming. (*Martinez* Rep. Ex. 6 (filed under seal).)

5. Due in part to his security level change, on July 18, 2011, Plaintiff was transferred from Hickory housing (a maximum-security unit at CUCF) to the transition section of housing in the Cedar unit. (*Martinez* Rep. Ex. 11 (filed under seal).)

6. Plaintiff was assigned to a cell with RR,[2] who was also classified as a level-"C3K" inmate. (Compl. ¶ 11.)

7. Plaintiff had not listed RR as a security concern. (*See* Inmate Classification Policy § FC04/05.04 and attached as Ex. 4 to the *Martinez* Rep. at 36.)

8. Plaintiff did not file a grievance about his new housing assignment or his cellmate, and did not file a grievance as to any aspect of his transfer to Cedar. (Decl. of Mel Coulter and attached as Ex. 1 to the *Martinez* Rep. at ¶¶ 28, 36 and Decl. of Billie Casper attached as Ex. 2 to the *Martinez* Rep. at ¶20.)

9. On August 1, 2011, Plaintiff did, however, send a note to Defendant requesting a two-month extension to challenge his Kappa behavior profile--classification that has not changed since his 2008 initial assessment. (*See* Compl. at 14 and *Martinez* Rep. Ex. 1 at ¶ 26.)

---

[2] Because Plaintiff's allegations were investigated but no charges filed, the cellmate is identified only by his initials.

10. Defendant reviewed Plaintiff's file and records and responded to Plaintiff in writing on August 1, 2011. He affirmed Plaintiff's "Kappa" designation and denied Plaintiff's request for an extension. (Compl. at 13 and *Martinez* Rep. Ex. 1 at ¶ 27.)

11. Afterward, Plaintiff did not formally challenge his classification by filing a Classification Challenge Form as required under the USP/CUCF classification review procedure. Though he contends his due-process rights were violated, Plaintiff also did not file a grievance about Defendant denying his request for a time extension in which to file a classification challenge. (*Martinez* Rep. Ex. 1 at ¶ 28 and *Martinez* Rep. Ex. 2 at ¶ 21.)

12. On August 5, 2011, Thompson was sexually assaulted in his cell by cellmate RR. (Compl. 6 ¶ 8.)

13. After reporting the sexual assault to CUCF officials and receiving medical attention, Thompson was transferred to USP.  (*Martinez* Rep. Ex. 11 (filed under seal).)

14. Plaintiff did not later file a grievance about the assault. (*Martinez* Rep. Ex. 1 at ¶¶ 28, 33; and *Martinez* Rep. Ex. 2 at ¶¶ 19–20.)

## II. Legal Standards

### A. Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) requires inmates to exhaust all available administrative remedies before seeking redress in the courts. Specifically, § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under *section 1983* of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See* 42 U.S.C.S. § 1997e(a) (2016).

The Supreme Court has held that PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle, 534 U.S. 516, 532 (2002)*. The Supreme Court has refused to "read futility or other exceptions into [the PLRA's] statutory exhaustion requirement." *Booth v. Churner, 532 U.S. 731, 741*, n. 6, (2001). The Tenth Circuit has held that "[t]he statutory exhaustion requirement of *§ 1997e(a)* is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corr. Corp. of Am., 331 F.3d 1164, 1167* n.5 (10th Cir. *2003).* Failure to exhaust is an affirmative defense that defendants are burdened with pleading and proving. *See Jones v. Bock, 549 U.S. 199, 212 (2007)*.

Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *before* filing a complaint in federal court. *See Porter, 534* U.S. at 524 (citing *Booth*, 532 U.S. at 741).

### B. Summary-Judgment Standard

The Tenth Circuit has recognized that "a motion for summary judgment limited to the narrow issue of exhaustion and the prisoner's efforts to exhaust is appropriate." *Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1211 (10th Cir. 2003)*, *abrogated on other grounds by Jones, 549 U.S. 199*. When deciding such a limited motion for summary judgment courts apply the same procedures used for other summary-judgment determinations. *Id.* Thus, the moving party bears the traditional summary-judgment burden of showing that an absence of evidence to support the plaintiff's contention that he exhausted all available administrative remedies. *See Cellotex v. Catrett, 477 U.S. 317, 325 (1986)*. Once the moving party has made such a showing, the burden shifts to the nonmoving party to produce admissible evidence showing that genuine issues of material fact exist precluding summary judgment on the exhaustion question. Plaintiff must identify specific facts put forth by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein. *Thomas v. Wichita Coca-Cola Bottling, 968 F.2d 1022, 1024 (10th Cir. 1992)*. Mere allegations and references to the pleadings will not suffice. However, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999)*.

### III. Defendants' Motion for Summary Judgment

Defendant asserts the affirmative defense that Plaintiff's claims are barred under the PLRA because Plaintiff did not exhaust available administrative remedies. To support this contention, Defendant has submitted the Declaration of Billie Casper, USP Grievance Coordinator, who states that there is no record Plaintiff ever filed any grievances about being

transferred to general population housing or sexually assaulted, or about any problems with his assigned cellmate. (*Martinez* Rep. Ex. 2 at ¶¶ 19, 22.)  Defendant also attests in his own Declaration that Plaintiff did not file grievances as to his move to Cedar unit or his cellmate, did not grieve the assault, and did not file a grievance about the denial of his request for more time to challenge his "Kappa" classification.  (*Martinez* Rep. Ex. 1 ¶ 37.)  By these sworn Declarations, the two officials in charge of prison grievances assert under oath that Plaintiff did not exhaust his administrative remedies.  Moreover, Plaintiff alleges in his Civil Rights Complaint (Doc. 6 at ¶ 13) that he "has not previously sought informal or formal relief from the appropriate administrative officials regarding the acts complained of herein" and admits that he "was past the seven day time frame in which to file an initial grievance." (Doc. 6 at ¶13.)

      Though he acknowledges in his Complaint that he did not file grievances or exhaust his administrative remedies, Plaintiff also asserts that "he needs not exhaust the PLRA because rape is not a condition of confinement." (Compl. *Doc 6 at ¶13*.)  Both the Supreme Court and the Tenth Circuit Court of Appeals, however, have applied the PLRA-exhaustion requirement to cases asserting the plaintiff-inmate was assaulted while in custody.  As noted, the U.S. Supreme Court has held in *Porter v. Nussle, 534 US 516 (2002)*, that PLRA's exhaustion requirement applies to "all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."

      In a case involving allegations that a plaintiff was assaulted by another inmate, the Tenth Circuit affirmed dismissal under PLRA for failure to exhaust.  *See Tuckel v. Grover, 660 F.3d 1249, 1251 (10th Cir. 2011).*  The Tenth Circuit reached the same conclusion in *Hesterlee v. Cornell Companies Inc., 351 Fed. Appx. 279 (10th Cir. 2009)*, when the plaintiff there asserted

that he was assaulted by prison officers.  The plaintiff did not file a grievance, and the Tenth Circuit affirmed dismissal under the PLRA exhaustion requirement.

Accordingly, Plaintiff's suggestion that he need not exhaust administrative remedies misinterprets the law.  Under Supreme Court and Tenth Circuit precedent, the PLRA exhaustion requirement has been applied to bar suits similar to Plaintiff's.  That precedent mandates dismissal of Plaintiff's suit.

Based on the present record, the Court concludes that Plaintiff could have sought relief under the USP/CUCF Grievance Policy, but did not.  Plaintiff did not meet the statutory prerequisite to filing this lawsuit, and his Complaint is therefore dismissed with prejudice under PLRA.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** Defendant's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies is **GRANTED.**  This case is **CLOSED**.

Dated this 14th day of March, 2016.

BY THE COURT:

_____
CLARK WADDOUPS
United States District Judge